John P. Donohoe, J.
The State Board of Social Welfare, Raymond W. Houston as the State Commissioner of Social Welfare and the People of the State of New York have instituted this action seeking a declaratory judgment that 12 points of the so-called “Thirteen Point Program” adopted by the City Council of the City of Newburgh and intended to govern the administration of welfare within that city are violative of the State and Federal law, rules and regulations of the State Board of Social Welfare and the Department of Social Welfare, and that the defendants be enjoined, both temporarily pending trial of this action and permanently from implementing, applying and effectuating the program in any manner which will contravene the provisions of State and Federal law, rules and regulations. The defendants in this proceeding are the City of Newburgh, the City Manager, the City Council of the City of Newburgh, and the Acting City Welfare Commissioner.
*540 Plaintiffs have moved for a temporary injunction restraining the defendants from taking steps to carry out the program and to preserve the status quo pending the trial. On the return date of the order to show cause seeking this relief, defendants cross-moved to dismiss the complaint under subdivision 4 of rule 106 of the Rules of Civil Practice upon the ground that the complaint fails to state facts sufficient to constitute a cause of action.
In view of the nature of defendants’ motion the court will first pass upon the sufficiency of the complaint. The complaint seriatim alleges that the plaintiffs’ powers, duties and responsibilities are defined in chapter 55 of the Consolidated Laws, known as the Social Welfare Law; it further alleges that the Department of Social Welfare is required by section 20 of the Social Welfare Law to supervise local welfare departments, establish regulations and policies for the administration of public assistance and care throughout the State and for their local administration. It further alleges that the Department of Social Welfare by appropriate measures has assumed the responsibilities of a Federal agency under section 29 of the Social Welfare Law; that the State Legislature has delegated limited powers to local units of government to further the administration of public assistance and care and has empowered such local units to enact regulations not inconsistent with the rules promulgated by the State Board of Social Welfare, the applicable provisions of law or regulations of the Department of Social Welfare. It further alleges that the defendant City of Newburgh, a municipal corporation, has as its chief administrative and executive officer the defendant Joseph McD. Mitchell, the City Manager; that the Common Council is the possessor of all legislative powers of the defendant city, and that the defendant Peter Z. Petrilli, Jr., is the Acting Welfare Commissioner and has the powers and duties conferred or imposed upon him by the Social Welfare Law and the City Charter; that the State Department of Social Welfare by virtue of its acceptance of responsibilities as a Federal agency is charged with the duty of administering the Federal aid program; that the maintenance of uniformity through the State in administering the Federally aided program has been established as State policy by the Social Welfare Law and regulations made pursuant thereto. Further, that on or about the 12th day of June, 1961, the defendant City Council adopted a resolution authorizing the City Manager to take such steps as may be necessary to put into effect city policy and rules in the administering of public welfare and that he be given unlimited *541 authority to reorganize the Department of Public Welfare, to cut the budget as he sees fit and to take any other measures to avoid a tax increase even if it means withdrawal of Federal or State reimbursement. That on or about the 19th of June the defendant City Council adopted a resolution directing the following 13 procedural changes in welfare administration hereinafter referred to as the “Thirteen Point Program,” to be put into effect on July 15, 1961. The controversial “ Thirteen Points” as alleged in the complaint are as follows: “1. All cash payments which can be converted to food, clothing and rent vouchers and the like without basic harm to the intent of the aid shall be issued in voucher form henceforth. 2. All able-bodied adult males on relief of any kind who are capable of working are to be assigned to the Chief of Building Maintenance for work assignment on a 40-hour week. 3. All recipients physically capable of and available for private employment who are offered a job but refuse it, regardless of the type of employment involved, are to be denied relief. 4. All mothers of illegitimate children are to be advised that should they have any more children out of wedlock, they shall be denied relief. 5. All applicants for relief who have left a job voluntarily, i.e., who have not been fired or laid-off, shall be denied relief. 6. The allotment for any one family unit shall not exceed the take-home pay of the lowest paid city employee with a family of comparable size. Also, no relief shall be granted to any family whose income is in excess of the latter figure. 7. All files of all Aid to Dependent Children cases are to be brought to the office of the Corporation Counsel for review monthly. All new cases of any kind will be referred to the Corporation Counsel prior to certification of payment. 8. All applicants for relief who are new to the city must show evidence that their plans in coming to the city involved a concrete offer of employment, similar to that required of foreign immigrants. All such persons shall be limited to two weeks of relief. Those who cannot show evidence shall be limited to one week of relief. 9. Aid to persons except the aged, blind and disabled shall be limited to three months in any one year — this is a feature similar to the present policies on unemployment benefits. 10. All recipients who are not disabled, blind, ambulatory or otherwise incapacitated, shall report to the Department of Public Welfare monthly for a conference regarding the status of their case. 11. Once the budget for the fiscal year is approved by the Council, it shall not be exceeded by the Welfare Department unless approved by Council by supplemental appropriation. 12. There shall be a monthly expenditure limit of all *542 categories of Welfare Aid. This monthly expenditure limit shall be established by the Department of Public Welfare at the time of presenting its budget, and shall take into account seasonal variations. 13. Prior to certifying or continuing any more Aid to Dependent Children cases, a determination shall be made as to the home environment. If the home environment is not satisfactory, the children in that home shall be placed in foster care in lieu of Welfare Aid to the family adults.”
The complaint then alleges that the City Charter enumerates among the City Manager’s duties the following: “ (c) To exercise supervision and control over the administrative departments of the city government, comprising a department of law, a department of public works, a department of public safety and a department of public welfare ”.
The complaint then alleges, on information and belief, that on the 15th day of July, 1961, the defendant Mitchell transmitted to Doris B. Harding, the then Acting Welfare Commissioner of the City of Newburgh, a memorandum stating that the “Thirteen Point Program” shall be effective after July 15, 1961, in the administration of public welfare. The aforesaid memorandum concluded with the following paragraphs: “It is the opinion of our Attorneys that the above changes can be legally implemented and sustained. In order that you, as Commissioner, may have the full benefit of legal counsel in putting these policies into effect, you are instructed to refer all Aid to Dependent Children cases, all Temporary Aid to Dependent Children cases, and all Home Relief cases to the office of the Corporation Counsel, prior to certification for payment. You are instructed to establish the means necessary to pay by voucher for such cases where decisions to pay by voucher are made. Beginning Monday, July 17, 1961, you are to provide that all adult male family members, i.e., heads of families, under ADC, TADC and HR categories shall report to Mrs. Evelyn Napolitano, Secretary to the Civil Service Commission, for interview as to their assignment to rehabilitation projects. Interviews shall be scheduled at Mrs. Napolitano’s convenience.”
The complaint then specifically enumerates the manner in which the “ points ” violate applicable laws as follows: “ Point No. 1 of the program makes mandatory the use of vouchers as a general rule and permits cash payments to persons on relief only in exceptional cases. Point No. 1 is in violation of one or more of the following provisions of Social Welfare Law, viz., Secs. 159, 170, 211, 286, 303, and 350. Point No. 1 is in violation of one or more of the following provisions of Title 42 of the United States Code of Law, viz., secs. 306, 606, 1206 and 1355. *543 Point No. 2 applies to all persons seeking home relief as well as to persons seeking other types of relief. Point No. 2 is in violation of Social Welfare Law Sec. 164 and Buie 5.2 of the Buies of the State Board of Social Welfare in that it sanctions the disregard of one or more of the following restrictive provisions in said section, viz.: (a) persons must be assigned to work which in the judgment of the public welfare official they are able to perform; (b) the assignment to work relief shall be for a period not exceeding the time necessary for the recipient to earn the amount of relief to which the applicant for relief may be entitled; (c) applicants for relief may not be assigned to work ordinarily performed by regular employees of the unit ordinarily performed by craft or trade in private employment. Point No. 3 denies relief to persons who refuse offers of private employment, without regard to their fitness for the job offered, or the conditions of employment or the rate of wages offered. Point No. 3 contravenes Social Welfare Law Sec. 131, subd. 4, and Sec. 139-a. Point No. 4 contravenes Social Welfare Law Sec. 349, and 42 U. S. C. A. Sec. 606. Penal Law Sec. 1843 reads as follows: ‘ See. 1843. Neglect of duty by superintendent or overseer of the poor. The county superintendents of the poor, or any overseer of the poor, whose duty it shall be to provide for the support of any bastard and the sustenance of its mother, who shall neglect to perform such duty, shall be guilty of a misdemeanor, and shall, on conviction, be liable to a fine of two hundred and fifty dollars, or to imprisonment ’ not violate the provisions of Social Welfare Law, section 349, would be liable to prosecution under the quoted section of the Penal Law.
“ Point No. 5 denies relief to any person who leaves his job voluntarily, even if he has ceased to be fit to hold the job, or was unaware of his want of fitness when he accepted it. Point No. 5 contravenes Social Welfare Law, section 131, subdivision 4, and section 139-a.
“Point No. 6 sets up criteria for eligibility to relief which are unauthorized by any provision of state or federal law.
“ Point No. 7 provides for a review by the corporation counsel of all aid to dependent children cases as an administrative step preliminary and pre-requisite to the granting of relief in all such eases and, accordingly, confers upon the corporation counsel duties extending beyond his usual and proper function of examining only such cases, involving actual legal problems or calling for potential legal action, as the department of public welfare may see fit to refer to him.
*544 “ Point No. 7 contravenes the provisions of the Newburgh City Charter and of the Social Welfare Law, section 77, which delegate to the department of public welfare and the commissioner of public welfare, and not to the corporation counsel, the authority to administer public assistance and care in the city; and violates the secrecy provisions of Social Welfare Law, section 136.
“ Point No. 8 sets up criteria for eligibility to relief and limitations thereon which are unauthorized by any provision of state or federal law, and contravenes Social Welfare Law, sections 62 and 139-a, and 42 U. S. C. A., sections 302 (b) (2), 602 (b) (1); 1202 (b) (1) and 1352 (b) (1).
“ Point No. 9 contravenes Social Welfare Law, sections 62, 131, 158 and 349, and 42 U. S. C. A., section 602 (b) (1).
“ Point No. 10 confers discretionary power upon the City Council of the City of Newburgh in regard to the making of supplemental or deficiency appropriations.
“ Point No. 11 contravenes Social Welfare Law, sections 91, 92 and 93.
61 Point No. 12 authorizes the Department of Public Welfare to place firm limits on expenditures for relief during future months, based on prior estimates which may be less than the monthly totals needed to pay the aggregate allowances to which applicants for relief may be entitled during such months.
“ Point No. 12 contravenes one or more of the provisions of Social Welfare Law, sections 76, 91, 92, 93 and 131.
u Point No. 13 provides for the placing of certain children in foster care, without requiring judicial action.
“ Point No. 13 contravenes Social Welfare Law, sections 397 (2) and 398 (2).”
The complaint concludes by alleging that the plaintiffs have demanded that defendants refrain from putting the provisions of the 13-point program into effect upon the ground that they are in violation of law, but the defendants have refused to comply with such demand. Paragraph 38 of the complaint sets forth reasons for granting a declaratory judgment and for injunctive relief at this time as follows: “ The granting of a declaratory judgment and injunctive relief at this time is proper and essential because: (a) The Thirteen-Point Program is per se violative of and not authorized by State and federal law, rules and regulations; (b) The Thirteen-Point Program per se directs and compels the performance of acts in violation of and not authorized by State and federal law, rules and regulations; (c) Defendants threaten to violate, and upon information and belief have violated such State and federal *545 laws, rules and regulations as are in conflict with the Thirteen-Point Program; (d) If the plaintiffs were required to resolve the questions of interpretation, application and validity of the various provisions of the Thirteen-Point Program through administrative proceedings and litigation arising out of individual relief cases, the attendant delays would result in such pain and hardship as would cause irreparable injury to the applicants and lead, if not restrained, to the disruption of the State plans for relief; (e) It will avoid a multiplicity of administrative and judicial proceedings which would otherwise be entailed if plaintiffs had to resort to a ease-bv-case method of resolving the controversies over the interpretation, application and validity of the provisions of the Thirteen-Point Program; (f) It will dispel the uncertainties of confusion as to the interpretation, application and validity of the provisions of the Thirteen-Point Program in the minds of persons now receiving relief in Newburgh or who may in the future be compelled to seek public assistance and care there — confusion and uncertainties created largely as a result of widespread publicity given to their program by the defendants and to the conflicting position of plaintiffs, in recent weeks; (g) Wide public interests are involved, including not only those of the citizens of the City of Newburgh but also those of the citizens and authorities of all the other public welfare districts of the State who are concerned with problems similar to those of the City of Newburgh, and are subject to the very laws and regulations involved in the instant controversy; (h) There exists the imminent possibility of a departure from the State plans adopted for the purpose of securing federal aid to the relief programs organized by tin1 State and approved by the Secretary of Health, Education and Welfare, and a departure from the federally imposed requirement that State plans shall operate uniformly throughout the State, which would result in the cessation of the flow of federal aid into the State of New York, and the imperiling of the continued unbroken operation of the existing State plans for public assistance pursuant to Title 42 of U. S. C. A., and the Social Welfare Law.
“No adequate remedy at law is available to plaintiffs. ’ ’
The argument advanced by defendants in support of their cross motion to dismiss the complaint is in their supplemental brief on page one and is tersely stated in these terms, “ the matter now before this court is simply and solely whether the actions for an injunction and for a declaratory judgment may b° maintained wlmu the Social Welfare Law furnishes an adequate and complete preliminary remedy, viz., a trial before *546 the Welfare Board after notice to the Defendants that the State money will be shut off.” This argument apparently proceeds from defendants’ interpretation of section 20 (subd. 3, par. [e]; subd. 4) of the Social Welfare Law, the substance of which is as follows: ‘ ‘ The department is authorized: * * * 3 * * * (e) to withhold or deny state reimbursement, in whole or in part, from or to any public welfare district dr any city or town thereof, in the event of the failure of either of them to comply with provisions of law, rules of the board, or regulations of the department relating to public assistance and care or the administration thereof. ” ”4. Except with the approval of the board and except after written notice and opportunity for a hearing before the board is given to the commissioner of the public welfare district affected, the department shall not withhold or deny state reimbursement, from or to a public welfare district ’ ’.
This grant of powers to the State Department of Welfare is construed by defendants as providing the sole remedy available to plaintiffs in this action. Defendants overlook the fact that the plaintiffs here are not the Department of Social Welfare, but the People of the State of New York, the State Board of Social Welfare and the State Commissioner of Social Welfare. Further, a plain reading of the provisions of the Social Welfare Law fails to disclose an intent to restrict plaintiffs to any particular method of enforcing the welfare law's of this State. On the contrary, sections 18 and 34 of the Social Welfare Law vest in the Commissioner and the board vast powers to govern the administration of welfare. Section 18, in part, provides: “ 1. The board shall make rules with respect to all of the functions, powers and duties with which the department and the board are or shall be charged and shall include, but not be limited to rules (a) governing the administration of public assistance, care and welfare measures throughottt the state ” (italics supplied). Section 34, entitled ” G-eneral powers and duties of the commissioner ’ ’, charges the latter 1 ‘ with the enforcement of [the Social Welfare Law] and the rules of the board and regulations of the department within the state and in the local governmental units ” (italics supplied). In view of this statutory'mandate to make rules and regulations, coupled with the power and duty to enforce, this court finds that the plaintiffs are not relegated to the single mode of relief urged by defendants and that the plaintiffs’ powers include the right to maintain this action. The cross motion to dismiss the complaint under subdivision 4 of rule 106 of the Rules of Civil Practice is denied.
*547 The remaining issue for consideration is whether or not plaintiffs have shown themselves entitled to an injunction pendente lite restraining defendants from implementing and carrying out the provisions of the ‘ ‘ Thirteen Point Program. ’ ’
The granting of a temporary injunction in such an action is governed by section 877 of the Civil Practice Act which provides: “ Injunction, when the right thereto depends upon the nature of the action. Where it appears from the complaint that the plaintiff demands and is entitled to a judgment against the defendant restraining the commission or continuance of an act, the commission or continuance of which during the pendency of the action would produce injury to the plaintiff, an injunction order may be granted to restrain it. The case provided for in this section is described in this act as a case where the right to an injunction depends upon the nature of the action.”
It appears from the complaint herein beyond question that the “ Thirteen Point Program ” enacted by the defendant City Council and implemented by the other defendants is violative of the provisions of the Social Welfare Law of this State or sets up criteria for eligibility for relief which are without sanction in law. The plaintiffs in their complaint have clearly shown the contents of the challenged “points” and the respective sections of the Social Welfare Law which are violated thereby or the other respects in which the “ points ” are claimed to be illegal. It sufficiently appears to this court that defendants have chosen to trespass in an area which the Legislature has reserved for the agencies charged with the responsibility of carrying out the welfare policies and program of this State. Subdivision 3 of section 18 of the Social Welfare Law carefully circumscribes the permissible area of regulation in which local government may function wherein it states: “ 3. Each city or county may enact regulations not inconsistent with (a) the rules so established and promulgated by the board; (b) applicable provisions of law; or (c) regulations of the department.”
A more precise limitation of the rule-making powers of local governing bodies could hardly be formulated.
The complaint herein buttressed by the supporting affidavits and exhibits in the moving papers have established plaintiffs’ clear right to the relief sought. The motion for an injunction pendente lite is granted (Civ. Prac. Act, § 877).
If the defendants feel that the welfare laws of the State of New York are inadequate to accomplish their purposes their recourse is to the New York State Legislature which has created these laws. The unilateral effort to abrogate these laws is not within the power of the defendants.
*548 Defendants err in assuming that by the interposition of then-cross motion to dismiss the complaint, a determination upon plaintiffs’ motion for temporary injunction was thereby adjourned. The record does not support this claim and having submitted their memorandum of law in opposition to the motion for temporary injunction, entitled “ Memorandum of defendants submitted in opposition to motion for temporary injunction and in support of motion to dismiss the complaint and action made under Rule 106, Rules of Civil Practice,” defendants have had their day in court. This court of equity will not countenance any further delay in granting- temporary injunctive relief. Submit orders in accordance with decision.